997 So.2d 162 (2008)
STATE of Louisiana, Appellee,
v.
Ronald C. BELSHA, Appellant.
State of Louisiana, Appellee,
v.
Billy T. Blow, Appellant.
State of Louisiana, Appellee,
v.
Demarcus Tyrone Hines, Appellant.
Nos. 43,623-KA to 43-625-KA.
Court of Appeal of Louisiana, Second Circuit.
October 22, 2008.
*163 Cary J. Ellis, III, Louisiana Appellate Project, for Appellant, Ronald C. Belsha.
James Edward Beal, Louisiana Appellate Project, for Appellant, Billy T. Blow.
Peggy J. Sullivan, Louisiana Appellate Project, for Appellant, Demarcus Tyrone Hines.
Don M. Burkett, District Attorney, Michael E. Daniel, Brian H. Barber, Assistant District Attorneys, for Appellee.
Before BROWN, GASKINS, and DREW, JJ.
BROWN, Chief Judge.
Four teenagers were indicted for second degree murder and attempted armed robbery. This appeal involves three of the defendants, Ronald Belsha, Demarcus Hines, and Billy Blow, who pled guilty pursuant to plea agreements and now claim that their sentences are excessive. We affirm.

Facts
On September 18, 2006, Derrick Sudds picked up Billy Blow, Ronald Belsha, and Demarcus Hines. Blow was armed with a.22 caliber revolver. Belsha provided information that the elderly victim, Vertis Booker, carried cash in his pocket. The four teens discussed robbing the victim as they drove to his house. After Sudds parked the car where it could not be seen, all four walked to Booker's house. Belsha, who was known to the victim, knocked on the door and asked for some water. When they asked for water a second time, the victim walked back into his house and Blow shot him twice. Defendants then ran to their car while firing shots back towards the house. Defendants drove back to get the victim's money but saw police and left the scene. They discussed robbing a nearby store; however, their vehicle was stopped at a roadblock, and they were arrested. Two .22 caliber revolvers were found in the car, and a .25 caliber pistol was found on Hines.
A grand jury indicted all four defendants for second degree murder, a violation of La. R.S. 14:30.1, and attempted armed robbery, a violation of La. R.S. *164 14:64 and 14:27. Belsha and Hines both pled guilty to attempted armed robbery. Hines entered an Alford plea, see North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), denying guilt but stating that it was in his best interest to accept the plea offer. Blow pled guilty to attempted armed robbery and manslaughter. Hines and Belsha were both sentenced to 30 years at hard labor. Blow was sentenced to 30 years on each count with the sentences to be served consecutively. Each defendant filed a motion to reconsider sentence which was denied. These three appeals have been consolidated on this court's motion.[1]

Discussion
Ronald Belsha argues that his 30-year sentence is excessive and points out that he was only 16 years old at the time of sentencing. Belsha further argues that he does not have a prior criminal history and has done well in school, and that these mitigating factors should weigh in favor of a less severe sentence.
Billy Blow asserts that although he fired the fatal shot, his overall participation in the crime was no worse than that of his co-defendants, each of whom received one-half of the sentence that he was given. As a first felony offender with no prior juvenile record, Blow contends that consecutive 30-year hard labor sentences are excessive and not supported by the record.
Demarcus Hines argues that the trial court tailored the sentence only to the crime and not the offender. According to Hines, he may have exercised poor judgment, but he did not plan the crime, choose the victim, or shoot anyone. He asserts that his decision to plead guilty before the other co-defendants may have facilitated the other guilty pleas. Finally, Hines notes that he has expressed remorse for his actions.
The state argues that the respective plea agreements operated as a sentence cap for which there is no appeal. Although the effect of the respective plea agreements was to substantially limit the defendants' sentencing exposure, a review of the record reveals that there was no express agreement to a sentence cap regarding any of the defendants.
Before imposing sentence, the trial court reviewed the PSI reports. The trial court took the defendants' personal histories into consideration, including their ages and prior criminal histories. At the date of the offense, Belsha was 15 years old while Hines and Blow were 16 years old. The court observed that neither Blow nor Hines had a juvenile criminal history, but that Belsha did. The court also stated that there was no history of drug or physical abuse in the families of any of the three. The court heard statements from the defendants and some of their family members.
The circumstances of this case indicate that each defendant's participation in this crime was significant. Belsha played a pivotal role in the crime. He was the only defendant who knew the victim. He told the others that the victim kept a significant amount of money on his person. Belsha also wanted to rob a nearby store after the victim was shot. Blow shot at least three rounds at the victim striking him twice and fired at the victim's home as he was fleeing the crime scene. After he and his friends drove away from the victim's home, Blow stated that he wanted to return to get the man's money. Hines was armed with a .25 caliber semi-automatic *165 pistol when he was arrested, and according to Belsha, Hines shot at the victim's home as he fled the scene. Although Hines claimed the pistol found on his person was inoperable, Belsha indicated that Hines' gun jammed after he fired the first round. When the police took the pistol off of Hines, the magazine was empty and one live round was in the chamber. The gun was in poor condition and was not successfully test-fired at the crime lab. The victim's 93-year-old mother was in the house at the time of this offense and had to retreat further into the home to avoid being hit by the bullets.
Each defendant received a substantial benefit from his plea bargain. Belsha and Hines changed their sentencing exposure from life to 49½ years. Blow was allowed to plead guilty to attempted armed robbery and to the reduced charge of manslaughter, thus also avoiding a possible life sentence. The plea agreement included the fact that Blow would receive consecutive sentences.
A sentence violates La. Const. Art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864. A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, this court may not set aside a sentence as excessive. State v. Guzman, 99-1753 (La.05/16/00), 769 So.2d 1158.
In this case we find no abuse of the trial court's broad discretion.
An error patent review reveals that the trial court failed to specify that the defendants' sentences for attempted armed robbery must be served without benefit of parole, probation, or suspension of sentence pursuant to La. R.S. 14:64 and 14:27. When a trial court fails to order that a sentence should be served without benefit as mandated by the statute, those required restrictions are self-activating and there is no need to remand for a ministerial correction of an illegally lenient sentence. La. R.S. 15:301.1(A); State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790; State v. Braziel, 42,668 (La.App.2d Cir.10/24/07), 968 So.2d 853.

Conclusion
For the reasons set forth above, the defendants' convictions and sentences are AFFIRMED.
NOTES
[1] We note that Sudds proceeded to jury trial. Sudds was found not guilty on count one (second degree murder) and was found guilty on count two (attempted armed robbery). He was sentenced to 30 years at hard labor.