h CARAWAY, J.
Defendant pled guilty to attempted disarming of a peace officer, a violation of La. R.S. 14:34.6, for which he received the maximum sentence, and a DWI first offense, a violation of La. R.S. 14:98, for which he received a sentence of six months to run concurrently with the other offense. At the time of his conviction, the defendant was on probation or parole for a crime committed in the State of Georgia. The trial court ordered that the Louisiana sentences would run concurrently with defendant’s Georgia time. The defendant believed extradition to Georgia would occur shortly after the convictions. When extradition did not occur, he moved for reconsideration of the sentence after he remained incarcerated in this state. Following denial of the motion for reconsideration of the sentence, defendant appealed. For the following reasons, we reverse defendant’s convictions and sentences and remand to the trial court.

Facts and Procedural History

David Pannell (“Pannell”) was arrested near Minden on September 5, 2002, after *883 the local police stopped Ms vehicle. Pan-nell allegedly refused to give police his name and was placed under arrest when he failed a field sobriety test. As he was advised of the charge against him, Pannell attempted to grab the officer’s weapon, and then fled. He was apprehended moments later and arrested.
Pannell appeared in court with counsel on December 13, 2002. The transcript discloses that the assistant district attorney (“ADA”) advised the trial court that Pannell was charged with attempted disarming of a police | .¿officer, first offense DWI, resisting arrest, driving under suspension and no proof of insurance. The ADA stated the following:
It’s my understanding that Mr. Pannell wishes to enter a guilty plea to the attempted disarming of a police officer with an agreed upon 2% year sentence, which would be the maximum, a DWI 1st he would also plead guilty to and the State would, as a result of that, dismiss the resisting arrest, driving under suspension, and no insurance. It’s also my understanding that Mr. Pannell is backing up 6 years in Georgia and the State has no objection to that sentence running concurrent should the judge so decide that.
The trial court advised Pannell of the following during the plea colloquy:
If you plead guilty to the attempted disarming a police officer, the Court would sentence you to the maximum wMch is 2jk years at hard labor and I will run that sentence concurrent, at the same time with any other sentence in this state or any other. If you plead guilty to the DWI 1st, I’ll give you 6 months, run that sentence concurrent, that’s the maximum, and run that sentence concurrent with the other sentence that I’ve just spoken to you about. The other two would be nol prossed and so that total would be 2]é years to run concurrent with any other sentence.
Thereafter, the trial court accepted Pan-nell’s guilty plea on both of the above offenses and his waiver of the sentencing delays and imposed sentences as stated above.
After sentencing, the ADA indicated to the trial court that Pannell wished to “waive any extradition and have his sentence served in Georgia.” The following exchange between the trial court, counsel and the defendant ensued:
Mr. Sentell: Your Honor, it’s my understanding also Mr. Pannell wishes to waive any extradition and have this sentence served in Georgia, is that correct?
Mr. Slaid: That is correct, sir.
The Court: Well, he’s going to have to sign the waiver of extradition or we’re not going to be able to do that.
l3Mr. Sentell: Yes, I understand. I’m just making the court aware and I believe the sheriffs department will provide him with that paperwork.
The Court: Where is it?
Defendant: May I speak? Automatically from the State of Georgia, if you’re released from prison, on your parole conditions or probation conditions, you automatically waive extradition rights.
Mr. Slaid: But you’re not getting out.
Defendant: Oh, I understand. They’re presently waiting for me, that’s the reason I want to go ahead and get this over with.
The Court: Yeah, I understand.
Defendant: And put this in the process of extradition.
The Court: Okay. Well, I understand. But we’ll have to require that you sign a waiver of extradition here, too.
Defendant: Okay.
*884 On January 2, 2003, the defendant moved for reconsideration of his sentence on the grounds that he was misled as to outcome of his guilty plea, that he misunderstood the trial court as to what would happen during the period of time he served out his sentence in Louisiana, and that he understood that he would be allowed to serve his 6 year sentence in Georgia. The trial court denied the motion on January 7, 2003 without a hearing. Thereafter, the trial court granted defendant’s appeal of this ruling.
The record next reflects that the defendant appeared in court for a March 17, 2003 hearing[1] to again reconsider the sentence at which time the transcript reflects that the district attorney gave the following description of the plea agreement:
Mr. Sentell: Your Honor, what I have, I do recall the conversation. What I show is that he did get a 2j¿ year hard labor sentence and then, I guess, 6 months on the DWI, and those were made concurrent with any other sentence. It |4was all of our understanding at that time that he would then be sent to Georgia to do that time....
The court was then informed that there had been a problem with the Louisiana Department of Corrections concerning Pannell’s release to return to Georgia. Following a short recess during which the ADA contacted the Department of Corrections, the problem was apparently resolved and the hearing ended with the expectation that Pannell would return to Georgia.
Pannell has not returned to Georgia and now pursues this appeal of the denial of his motion to reconsider sentence.

Discussion

The record indicates that at the time of his arrest in Louisiana, Pannell was either on probation or parole from the State of Georgia. Whether Pannell’s supervision had been transferred to Louisiana is not revealed. However, in any event, his arrest in Louisiana apparently exposed him to serve an existing six-year sentence in Georgia because of a probation or parole violation. Although the defendant apparently expected to return immediately to Georgia, the authorities in Georgia have not acted to obtain his extradition.
Pannell assigns as error the trial court’s failure to grant his motion to reconsider sentence and further argues that his guilty plea should be set aside for the State’s failure to extradite him to Georgia. Pan-nell argues that the State intended to return him to Georgia to serve all of his time concurrently and that he entered his plea based on that condition.
Withdrawal of a guilty plea after sentence is discretionary with the trial court, subject to reversal only if that discretion is abused or arbitrarily 1 ^exercised. State v. Anderson, 27,356 (La.App.2d Cir.9/27/95), 661 So.2d 542; State v. Hall, 26,006 (La.App.2d Cir.5/4/94), 637 So.2d 645, writ denied, 94-1373 (La.9/30/94), 642 So.2d 868. A trial court may set aside a guilty plea and sentence when the facts surrounding the guilty plea show it to be constitutionally deficient. State v. Smith, 406 So.2d 1314 (La.1981). A guilty plea is constitutionally infirm when a defendant is induced to enter that plea by what he justifiably believes was a plea bargain, and *885 that bargain is not kept. State v. Dixon, 449 So.2d 463 (La.1984); State v. Anderson, supra.
 The prison authorities of the first sovereign, the state that granted parole, properly determine what effect any new conviction will have upon the sentence imposed there. State v. Smith, 595 So.2d 813 (La.App. 2d Cir.1992). In like manner, upon revocation of probation after another offense, the authority to order consecutive service rests with the court that originally imposed the probated sentence, rather than with the judge who presided over the second conviction. La.C.Cr.P. art. 901; Smith, Id.
The record of the guilty plea and the subsequent hearing of March 17, 2003, discloses that all parties have proceeded under the assumption that Pannell would be returned to Georgia. Nevertheless, state officials from Georgia exercise their own authority over matters of parole violations and extradition, and they have not acted. The plea and agreed upon sentence, therefore, were arguably based in part on circumstances beyond the trial court’s control, thus calling into question the voluntariness of the plea. Recognizing this, the trial court offered at one point during the March hearing to allow Pannell to withdraw his plea. Nevertheless, after the ADA [r,solved the problem with the Louisiana Department of Corrections, the hearing once again concluded with the erroneous assumption that Georgia would act.
Under these circumstances, a withdrawal of the guilty plea pursuant to La.C.Cr.P. art. 559 could not have been made at the time that the defendant learned that he would not return to Georgia. Nevertheless, the record reveals that the trial court would allow the withdrawal of defendant’s plea in this case if the bargain of the plea agreement could not be kept. Accordingly, we reverse the conviction and sentence and remand to the trial court for further proceedings.
REVERSED AND REMANDED.

. The State's brief characterizes this hearing as held at the defendant’s request and the transcript describes it as a motion to reconsider sentence. However, the record reflects that when the second hearing occurred, Pan-nell had already appealed the denial of the motion, thereby divesting the trial court's jurisdiction under the provisions of La.C.Cr.P. art. 916.